PETER MILLER and Another v. J. C. DAYTON and Another.[1]

March 10, 1905.

Nos. 14,152—(192).

**Gratuitous Bailment.**

Appellants gratuitously acted as custodians of funds for respondents, and disbursed the same upon the order of their representative, who had full charge of the business in that locality. After the business had been carried on for about two years, plaintiffs served the following notice on appellants: "To Dayton & Nepstad. Don't pay any money out except for stock. Miller Bros. Dated 1—15th."

*Held:* Under the circumstances developed by the evidence appellants did not, as a matter of law, violate the terms of the notice in cashing

[1] Reported in 102 N. W. 862.

certain checks issued by respondents' representative to reimburse himself and another for money advanced and borrowed for use in carrying on the business. The question should have been submitted to the jury, and it was error to direct a verdict for respondents.

Action in the district court for Fillmore county to recover from defendants $240.60, being a balance of money on deposit. The defendants, answering, alleged that the money had been paid out by them upon the order of plaintiffs' agent pursuant to plaintiffs' instructions. The case was tried before Kingsley, J., who directed a verdict in favor of plaintiffs for the sum demanded. From an order denying a motion for a new trial, defendants appealed. Reversed.

*Wells & Hopp,* for appellants.

*George W. Rockwell* and *Gray & Thompson,* for respondents.

LEWIS, J.

Plaintiffs were copartners engaged in the business of buying and shipping stock at Rushford, Minnesota, and from 1901 to about the middle of May, 1903, one Frickson, of Peterson, Minnesota, was interested with them under an arrangement whereby plaintiffs were to furnish the capital and the three to divide profits and losses. Defendants were general merchants at Peterson, and acted as gratuitous custodians of the money. In the conduct of business the custom was for Frickson to issue checks upon defendants, who cashed them out of the funds furnished by plaintiffs. Quite a large amount of business seems to have been transacted, and considerable money was placed upon deposit from time to time. January 15, 1903, for some reason which does not appear, plaintiffs served the following notice on defendants: "To Dayton & Nepstad. Don't pay any money out except for stock. Miller Bros. Dated 1—15th." Subsequently to this date, and about May 1, 1903, defendants cashed a check issued by Frickson to a Mr. Bartlett for $150, and another for $100, issued by Frickson payable to himself. During the month of May, 1903, a settlement was had between the parties, and these items were disallowed by plaintiffs upon the ground that they had been paid out contrary to the terms of the notice, and this action was brought to recover the amount of those checks, less the sum of $9.40, which was allowed. The defense interposed was that checks, although upon their face appearing to have been paid for cash, were in fact paid

out for stock. At the close of the testimony the court directed a verdict for plaintiffs for the full amount, with interest.

The appeal requires us to determine whether or not there was any evidence reasonably tending to support defendants' claim that the money paid out upon the two checks was not paid contrary to the terms of the notice. As to the $150 item, according to the testimony of Frickson, on or about April 1, 1903, he either purchased or made a contract for the purchase of stock from certain persons (Randall and Boyem); that there was no money on deposit with defendants at that time, and for the purpose of meeting these purchases he made a temporary loan of $150 from Bartlett, out of which $70 was paid on the Randall account and $81.90 on the Boyem account. At the time of borrowing this $150 Frickson gave his check for that amount upon defendants, and when Bartlett presented it for payment he was told by defendants that they had notice from plaintiffs not to pay out any money except for stock. Bartlett replied that the money borrowed was for the purchase of stock. It was known to defendants that the check issued to Bartlett was not in payment of stock sold by him, and it may fairly be inferred from what was said and done that defendants knew the money advanced by Bartlett was for the purpose of purchasing stock. If, in the course of business, Frickson made contracts for the purchase of stock from Randall and Boyem, and, there being no money on deposit with defendants to meet the purchase, he made a temporary loan from Bartlett to be used in the business, which was so used, and defendants thereafter, being informed of the situation, reimbursed Bartlett for the money so advanced, such payment by them was not, as a matter of law, contrary to the terms of the notice.

So far as the $100 check is concerned, the evidence of Frickson was to the effect that about March 30, there being no money on hand, he paid defendants $80 out of his own money, and later the further sum of $9.40, in the purchase of stock, for which he afterwards issued a check upon defendants, payable to himself. It does not distinctly appear whether defendants knew that the $9.40 was paid out for stock by Frickson, but they did know he deposited $90 with them for the purpose of furnishing money to carry on the business. True, this money may have been received by Frickson from plaintiffs, or from sale of stock. If so, it tends to show that plaintiffs, after January 15, in a general way

intrusted the transaction of their business to Frickson, and, if it was true that in the conduct of such business the money was advanced by Frickson himself for the purpose of meeting expenses and paying for stock, and defendants issued their check for $100 to reimburse him, then it does not follow, as a matter of law, that in so doing they violated the terms of the notice. Defendants were acting without compensation as disbursing agents for plaintiffs. The business had been conducted for more than two years, and apparently a large volume of business had been carried on. Occasionally they had paid money directly to Frickson himself. It does not appear there was any limitation upon the authority of Frickson as to his method of transacting business, or that he was to disburse money entirely by check.

Under such circumstances defendants were only required to use ordinary care and act in good faith to see that the money intrusted to their custody was applied to the proper purposes. The notice should be construed with reference to the character of the business, the length of time it had been carried on, and the apparent authority with which plaintiffs had vested Frickson. Strictly construed, perhaps, defendants would be required to pay no money except to an actual seller of stock, but, in view of all of the circumstances of the case, we are of the opinion that plaintiffs are not entitled to hold defendants to so strict an account.

This conclusion is not changed by the fact that subsequently plaintiffs gave Frickson credit for the same items. The question turns upon the position occupied by defendants at the time they paid the checks. The notice in question had been served two months and a half prior. The parties resided only five miles apart, and plaintiffs had at their command the facility of ascertaining the true condition of account as between themselves and their representative Frickson. If the conduct of the business permitted by them was such as would lead defendants reasonably to assume that all that was required by the notice was to see that the money paid out by them was used in the business, then they might be justified in reimbursing the parties who temporarily advanced money for the business. There is no evidence to indicate bad faith, and it is at least debatable whether, under all of the conditions, the notice was sufficiently specific to notify defendants that it was the purpose of plaintiffs absolutely to prevent Frickson from borrowing money, or in any way handling the cash.

We have arrived at the conclusion that the court was not justified in directing a verdict, and should have submitted to the jury the question of fact whether or not in paying the checks in question defendants were violating the terms of the notice.

Order reversed.